Good morning, ladies and gentlemen. It's our September term of court, and the court is delighted to be back at home here in Springfield in our courtroom. Our first case of the day is Agenda Number 1, 115872, People of the State of Illinois v. Datta Mosley. Are the parties ready to proceed? You may proceed. Well, good morning, and welcome back. Honorable Justices of the Court, may it please the Court Assistant State's Attorney Noah Montague on behalf of the people in this matter. Your Honors, this case presents this Court with a scenario very similar to the one that this Court faced in the recently decided case of In re. Derrick Ogee. In both that case and this one, the Circuit Court disagreed with the legislative policy decision, which removed some amount of judicial discretion. In the case of In re. Derrick Ogee, the Circuit Court wanted to continue the case under supervision. In the present case, the Circuit Court wanted to give the defendant a sentence of probation. In both cases, the Circuit Court responded to laws which removed part of their discretion by unilaterally, without any motion from the parties, unilaterally questioning the constitutionality of the statutes that removed their discretion. And in both cases, the Circuit Court ultimately used their power to review the constitutionality of the applicable statutes to reclaim their discretion. However, just as in the case of In re. Derrick Ogee, the Circuit Court here has stated no valid reason to find the laws applicable here unconstitutional and the same result should apply and the Circuit Court's findings should be reversed. In this case, Your Honors, the defendant was a 19-year-old who had no boy card. He had a loaded gun in a public playground where children were playing. Multiple gun offenses resulted, gun charges resulted. The defendant elected to have a bench trial and he was convicted on all counts. The defendant then challenged factual sufficiency of his convictions on a motion for a new trial. And the Circuit Court ruled that one offense, a Class III felony version of unlawful use of a weapon, the defendant was acquitted on that count, but the Circuit Court affirmed its convictions on all six aggravated unlawful use of a weapon counts. The Circuit Court then proceeded to a sentencing hearing at which the court, at the very outset of that hearing, asked the assistant state's attorney if the defendant was required to be sentenced under Provision D-2, which requires a mandatory minimum of one year in prison without probation. After the state's attorney responded yes, the Circuit Court, without any motion from the defense, sua sponte raised a constitutional issue with the aggravated unlawful use of a weapon statute and ultimately ruled three different provisions of that statute unconstitutional on three grounds. The first ground that the Circuit Court ruled upon, which is not challenged on appeal here by the defense, the Circuit Court found sentencing provision D-2 and two underlying offenses unconstitutional under the proportionate penalties clause using the identical elements test and comparing those offenses to misdemeanor unlawful use of a weapon. That misdemeanor unlawful use of a weapon statute had, prior to the court's ruling, been held unconstitutional by the Seventh Circuit in Moore v. Madigan, the reasoning of which was adopted by this court in a subsequent ruling, People v. Aguilar. So effectively, in that sense, any error that the Circuit Court found on this portion of its ruling is effectively cured because the comparison statute is no longer valid. However, it's important to see as well that the actual finding of the Circuit Court that there was identical offenses in this case was simply wrong, and the plain language of the statutes in these cases, in these offenses, shows that clearly where each aggravated offense that the Circuit Court ruled upon contains an additional element that is not necessary for the misdemeanor offense. I also may ask you, in our analysis of this case, do we need to weigh in on the reasoning offered by the trial court, or are we looking at the new world post-Aguilar, and should that be our focus? Well, Your Honor, what is before this court is the Circuit Court's Rule 18 order, as well as the Circuit Court's decision to vacate the felony convictions and enter a misdemeanor conviction. And this court has ruled in the past that any decision by a court of this state that invalidates a law does create a bit of chaos, is not the word, but it creates a disruption in the law and the expectations of the people who enter the justice system. So it is the people's position that the Court can and should rule upon the findings of the Circuit Court here, and obviously should reverse those findings, including, of course, the identical elements. The Circuit Court's second finding in this case was that the same sentencing provision, D-2, also violated the proportionate penalties clause because it shocked the moral sense of the community that the court was required to give a one- to three-year sentence with no possibility of probation. However, this sentence here that's provided by D-2 is not shocking in that it was being applied to a Class 4 felony. The defendant was convicted of six Class 4 felonies, each carried with a possible sentence of one to three years. Thus, it cannot be surprising, much less shocking, that some combination of those offenses can enhance the sentence and remove the possibility of probation and simply require the sentence that was already possible. But the error in the Circuit Court's finding on this point is seen in the narrowness of its reasoning because what the Circuit Court focused on here was entirely the lack of discretion to give probation. And it should be noted that the Circuit Court here did not have a problem with sentencing this defendant for this offense to prison because the Circuit Court here eventually, after its ruling, did sentence this defendant to six months in prison. So the Circuit Court found that the facts and circumstances of the case did warrant a prison sentence and, in fact, based its ruling entirely on the lack of probation as an option. However, this Court has already rejected the idea that a mandatory minimum prison sentence itself can be shocking in cases such as McCarty, where a 15-year prison mandatory minimum was found not to be shocking, even in the light of the defendant's unsuccessful attempt to make methamphetamine, and a case called People v. Taylor, which the people cited in their reply brief, where this Court said that the proportionate penalties clause of the Illinois Constitution, quote, should not and does not prevent the legislature from fixing mandatory minimum penalties. The fact, however, is that the Circuit Court's findings under the proportionate penalties clause here should be rejected because, ultimately, this penalty of one to three years in prison is in proportion to the seriousness of the offense. And this can be seen from the ordered escalation of penalties that the Illinois legislature has provided for gun possession without a FOIA card in this state. The FOIA Act itself sets a baseline where possessing a gun without a FOIA card anywhere in the state is a Class A misdemeanor. If that gun is then possessed in public by someone without a FOIA card, the offense is then raised to a Class 4 felony where probation is possible. And if in the instance here where the gun was possessed in something like a public playground and that gun is also loaded, uncased, and immediately accessible or ready to fire, that presents a more serious risk to the public than other types of gun possession by a person without a FOIA card. And the legislature here set the penalty in D2 in proportion to that risk. The Circuit Court's findings under the Proportionate Penalties Clause, then, in this case, should be reversed. The third finding by the Circuit Court in this case was that that same sentencing provision, D2, violated the Due Process Clause. But it's a bit of a nuanced finding by the Circuit Court because it didn't actually find anything wrong in the operation of the sentencing provision itself, but rather found that because the sentencing provision penalized the lack of a FOIA card, that the operation of the FOIA Act itself invalidated the sentencing provision because of what the Circuit Court called a, quote, juridical impossibility of compliance by 18- to 20-year-olds with the FOIA Act. However, the plain language of the FOIA Act itself refutes this claim. It is simply put, not impossible. A double negative may not be simply put, but it is possible for 18- to 20-year-olds to get a FOIA card under the FOIA Act. Any 18- to 20-year-old in this state who has either a parent or a guardian who is eligible to get a FOIA card themselves can get a FOIA card so long as that parent or guardian submits a written consent. However, the FOIA Act does not stop there and say, well, if you don't have that written consent, you don't get a FOIA card. The FOIA Act goes on to say, well, if you are facially ineligible, and this applies to all manner of ineligibility, if you are facially ineligible, you can appeal to the director of the state police. Rules have been promulgated to say how and when the director of the state police will grant appeals. And as noted in the people's reply brief, the Illinois legislature has noted in some of its gun offenses that FOIA appeals may be granted. And so the legislature expects these appeals to be granted. But it's also important to see that this is not the only contingency in the FOIA Act for 18- to 20-year-olds. There also are granted judicial review of their appeal to the director of the state police. And this court reviewed and analyzed the FOIA Act and how it operates in the case of Quorum v. State of Illinois. And in that case noted that the FOIA Act guarantees an individualized assessment of each appeal and judicial review. Thus, the circuit court's finding here that there is an impossibility of getting a FOIA card is simply incorrect. It's also important to see that what the circuit court ultimately ruled was that a sentencing provision of the state violated due process. But the Illinois legislature has a very well-established power to prescribe penalties or to define offenses and prescribe penalties. And that power is only subject to rational basis review under the Due Process Clause. And it is clear that the sentencing provision B-2 passes rational basis review, where the Illinois legislature clearly has a legitimate interest in the public safety in a state where we have hundreds and hundreds of people killed every year by guns. And it's also clear that this sentencing provision is rationally related to that public safety risk where the circuit court, excuse me, where the legislature recognized that it could possibly deter unsafe gun possession, which is exactly what is at issue in this case because you have someone, anyone that's sentenced under D-2 does not have a FOIA card, and they are in public, and they have that gun ready to fire. There is an elevated risk to the public safety in that circumstance, and the circuit, the Illinois legislature properly used its power to attempt to deter that risk to public safety. So this court should reverse the circuit court's finding that there is a due process violation in this case. Would an evidentiary hearing be necessary to determine if the equal protection argument prevails in connection with this defendant's ability to secure a pardon? No, Your Honor. Your Honor, an as-applied hearing would not be appropriate at this stage of the proceedings. At this point of the proceedings, it is clear from this record that this defendant has never applied to get a FOIA card. This defendant has had multiple chances to tell the court, this court and the circuit court, whether or not what steps it has taken and how these laws apply to him, and he has never claimed and still does not claim that he has ever even applied to get a FOIA card. Thus, all the facts in this case as to the status of his parents and whatnot is simply speculation at this point because there is no fact or there are no facts in this case that can be presented which would actually say how the law would apply to him because he hasn't even applied. He hasn't even applied to get a FOIA card. What would your position be, Counsel, if the facts were different and he did apply and couldn't get the FOIA card? Your Honor, if this defendant applied, was denied, appealed to the Director of the State Police and the Director of the State Police denied, and then appealed for judicial review on that basis, well, then it would be a factual hearing on that basis of whether or not the Director of the State Police properly denied his application. So your position wouldn't be he could be charged regardless, saying that even if he was 18 to 20 years old and didn't have a FOIA card? Would you acquiesce to the argument of the defendant then? I'm sorry. I don't understand. Well, I'm just saying your position today is, you know, we don't know. He didn't apply. He had an opportunity to apply. He didn't seek judicial review, right? And if all that happened, if he did all that and was denied a FOIA card, would you acquiesce that he couldn't be charged under that section? No, Your Honor. No, there is a certain point where under any licensing scheme, in particular under the Second Amendment, where the United States Supreme Court, in the case of District of Columbia v. Heller, there are long-standing traditions of categorical denials. Some people simply have, from the outset of this country's founding, been recognized to not qualify to get a gun. It has long been recognized that certain people are too dangerous to get a gun. And if that determination has been made, well, then no, this defendant then would not be a person that should have a FOIA card. And thus, if he did possess a gun without a FOIA card, that would be illegal under the laws of the state. Help me to understand how Aguilar figures into the, I guess, into the sentencing under D-2, where you have to, in this case, he has to have been convicted of A-3A and A-3C. Did Aguilar not remove A-3A? Aguilar did remove A-3A. But actually the plain language of the sentencing provision D-2 doesn't actually require a conviction under both of those or even either of those two provisions, A-3A and A-3C. A person could be charged and convicted and sentenced under D-2 without being charged with either of those offenses because the plain language of D-2 states that as long as the person qualifies for sentencing there, as long as they commit one offense of aggravated or unlawful use of a weapon, and that singular offense thus contemplates that there are not two, necessarily two convictions. The legislature intended it to apply even if there's only one conviction, thus you don't need both A-3A and A-3C. But the further language of D-2 also states that so long as the factors listed in A-3A and A-3C are present, which is to say that the facts listed in those aggravating factors have been proved. And it's important that the thing, the sentencing provision, says the factors listed there are present because that shows the legislature's intention to simply incorporate by reference the factors listed there as sentencing enhancements and not actually require a conviction under those two offenses. So the offender would not be charged with violating A-3A and A-3C? Would he be charged with violating D-2, the sentencing provision? How is he put on notice that this is possible? That's correct. That does bring up a different issue of procedural due process, which wasn't an issue in the facts of the present case because he was charged with these offenses. And the people would note that the statute has since been amended so that this is no longer presumably a problem. But may I ask though, was he not charged? The actual indictment charged him, the counts, were, for example, 720 ILCS 5-24-1.6A1, A-3-1 or A-3A or A-3-6 or A-3 whatever. So the charge here that, am I not correct, was that either he carried this weapon on his person in a vehicle or he carried it on or about the public way? Didn't the court have to find one or either of those two things first before the court would go forward as to the aggravating factors? As far as the court's factual determination for guilt? The court had to find that he carried this weapon on his person on a public street, correct? Correct. Under certain circumstances, which are the aggravating factors. Well, the statute says one or two and one of the factors. Correct. So wouldn't you read that the state would have to prove one or two? And if the state didn't prove either one of them, that's the end of the discussion. But if they did prove, let's say, two, then they'd also have to prove for aggravation one of the other factors. That's correct. Is that how you read the statute as well? Yes, Your Honor. So the court had to find that he not only possessed a weapon on his person on the public way? The court would have to find that, but that finding alone would not be sufficient for a finding of guilt. But what if that's unconstitutional? If that would be unconstitutional, Your Honor, that alone in itself, presumably that would invalidate the statute, but it's the people's position that because the offense is not simply defined by A1 and A2, that's only part of the offense, and you cannot commit the offense by simply committing what is described in A1 or A2, that the offense then would not be invalidated because you have to prove something else. I see that my time is up. Thank you. Thank you. Good morning, Your Honors. Gilbert Lenz on behalf of Appellee Donta Mosley. Your Honors, the State earlier said that the trial judge's ruling of unconstitutionality was entirely limited to the sentencing provision. That is exactly right. There were two rulings here. The first ruling by the trial judge was that he found the sentencing provision under D2 unconstitutional, a nonprobational prison term, and then he went beyond that ruling and held that not only would Donta Mosley not be sentenced to prison under D2, he would be found not guilty of any felony at all. That's the first reason why the judge's constitutional ruling is moot. There's another reason that it's moot, and this Court asked about that at the end of the first argument. Subsection D2, the nonprobational sentencing term, that's triggered by a conviction under 3A and a conviction under 3C, cannot be applied to Donta Mosley in this case ever again after this Court's decision in Aguilar. And that's because of the way the State charged this case. And I'd like to address first what you finished off with, the arguments 2 and 3 in the appellee's brief on why subsection D2 cannot apply to Donta Mosley. The plain language of the subsection D2 is not that subsection 3A is a free-floating factor that can be cut from subsection A and the elements and pasted into subsection D. Subsection 3A is an invalid element, and a conviction under 3N of the plain language of D2 is required in order to trigger that sentence. It's hard to imagine two provisions that are more intertwined than subsections 3A and D2. And, in fact, the State's opening brief, they say that it's a combined offense. Subsection 3A plus subsection 3C plus subsection D2 is one offense. They've now abandoned that language in the reply brief, perhaps realizing that that doesn't mesh well with the severability argument, that 3A and D2 are inseverable. But the fact of the matter is there is no combined offense. And even if there was, hypothetically, such a combined offense, that combined offense can never be found in this particular case because of the way the State charged it. The State charged six individual counts of Ag UUW, two under 3A, two under 3C, two under 3I. Even if this Court has jurisdiction to increase Donta Mosley's conviction, and I'll address that in a moment, even if this Court has jurisdiction to do that, it can only reinstate the convictions under the 3C and 3I counts. The State cannot now amend its charging instrument. Those four counts say Donta Mosley was guilty of Ag UUW for not having a FOID and for being under 21. Those counts make no mention whatsoever of subsection 3A, make no mention of the factual allegation required to prove subsection 3A, and no mention of the nonprobationable sentencing term. Even if Donta Mosley's conviction is increased from a misdemeanor to a felony, he will never be eligible for the nonprobationable term under subsection D2. The constitutional ruling of the trial judge is therefore moot, and this Court should dismiss this appeal. But there's another reason why that ruling is moot, and I'd like to now address argument one in the appellee's brief, because there were two rulings here, Your Honors. The judge found the sentencing provision unconstitutional, as the State says. His Rule 18 findings were entirely limited to the sentencing provision. He never found any of the individual counts unconstitutional. He didn't say 3A was unconstitutional, 3C or 3I, and the State admits in its opening brief that he never found subsection 3I unconstitutional. But what he did was he entered conviction for a misdemeanor. If he, if this judge believed that, if this judge, if this was not an acquittal, the judge would have been required to enter a conviction under 3I because he never found that provision unconstitutional. He decided at the end of the day, after this long process, and it was a very long process, after his finding that the sentence was a misdemeanor. And how do we know that? It's from the record, the oral pronouncement of the court, the controlling order in this case, on the last day of court. He said not only would D'Antimozzi not be sent to prison, but I'm going to vacate all six felony counts, including the two that had nothing to do with his constitutional ruling. This judge knew that he could sentence D'Antimozzi to probation on any one of the individual felony counts, but he chose not to enter a conviction under any of those counts because he found D'Antimozzi guilty of a misdemeanor. Is that the remedy when a court finds a sentencing provision unconstitutional? In other words, don't we see cases where the court might find, under proportional penalties or something, a sentencing provision unconstitutional, and then the court goes on to apply the prior sentencing provision? Yes. Is that usually the remedy for that kind of finding? That is the remedy in every one of the cases this court has considered under Rule 603. When the constitutionality of a sentencing provision is at issue, the judge, every case this court has considered under Rule 603 on the constitutionality of a sentencing provision, the judge found the sentence unconstitutional, entered conviction on the charged offense, and then gave what the judge deemed to be a constitutional sentence. This court has never reached the constitutionality of a sentencing provision where there was not a conviction entered on the corresponding offense. Similarly, this court has never increased someone's conviction after a final judgment was entered by the trial court on a lesser included offense. That's why this was an acquittal, Your Honor. This judge knew there were six felony counts here and that he could enter conviction under any of those and sentence him, Mr. Mosley, to probation. But he, at the end of the day, pronounced that Mr. Mosley was guilty of a misdemeanor and vacated all of the felonies. And that is an acquittal under Evans' U.S. Supreme Court case from last year under the Illinois Constitution. It's a strange situation to be sure, Mr. Lenz. But on the other hand, isn't there another way of looking at it? The sole reason that the trial court vacated the convictions on the greater offenses was his belief that the sentences were unconstitutional, right? I mean, there's no dispute about that. The dispute that he believed the sentences were unconstitutional? Yeah. Absolutely. Right. And although being a novel way to approach it, I mean, as we look at it, the conviction and the sentence for the lesser included offense does flow directly from that finding, doesn't it? It flowed in the mental process of this judge, but it wasn't the reduction of the conviction to misdemeanor was not legally necessary from the judge's constitutional ruling. And the record makes plain that this judge not only intended that Mr. Mosley would not be sent to prison under the unconstitutional sentence. This judge made it clear in the record at the end of the day that he was convicting Mosley of a misdemeanor. And that's clear from his oral pronouncement on the last day of court, and I'll just emphasize two lines of that, Your Honor, on page J4. He says, do we take away your ability to ever find a job by having a felony conviction? And if you have a misdemeanor offense, you can apply for a Floyd card when you're 21. Those are not the statements of a judge who's merely declining to send someone to prison on an unconstitutional sentencing provision. Those are the statements of a judge who, after this long mental process, decided Mr. Mosley would not have a felony conviction at all. That is an acquittal under Evans and the Illinois Constitution, and that's why this court lacks jurisdiction to reach this appeal. Was there any finding that the evidence was insufficient of the felony? The judge's pronouncement on the last day of court was such a finding. Was such a finding of insufficiency? Is that what you're saying? It was a finding that Donta Mosley was guilty of a misdemeanor. Now, this court does not require trial judges to make specific factual findings. I would point the court to the finding of guilt at the end of trial. The judge made no findings of fact then either. A trial judge is invested with the authority to make a determination of guilt or innocence without making specific factual findings, and the trial judge has the authority to change his mind at any point while he retains jurisdiction. The trial court here still had jurisdiction. It had the authority to reduce Mr. Mosley's conviction, and its pronouncement on the last day of court was the exact kind of finding that the U.S. Supreme Court has declared constitutes an acquittal. And I would also add here, Your Honors, that the state knew. The state knew that there were six felony counts here. The state knew that the constitutional ruling had nothing to do with at least two of those counts, if not all of them, the two under the under 21 provision. The judge from the bench declared that all six of those felony counts were vacated and that Mr. Mosley was guilty of a misdemeanor, and the state did not object, did not file a motion to reconsider, as there is some precedent for, this court has found, and they did not file a motion to stay the judgment pending the Rule 603 appeal. The state allowed a final judgment to be entered on a misdemeanor conviction, and that removed any Rule 603 jurisdiction this court has to reach the sentencing provision. That ruling is no longer before this court. I would add also, Your Honors, that the state may have a very legitimate concern that having a trial court ruling out there, finding a sentencing provision in the constitutional destabilizes the legal environment. We don't dispute that. That's why not only should this court dismiss this appeal, it should vacate the circuit court's order on the constitutional findings because that is entirely moved by the intervening events, the acquittal and this court's decision in Aguilar. Didn't the circuit judge here at one point state there were sufficient facts for a conviction of the felony charges? He did say that, Your Honors, and then he changed his mind. Okay. On the last day of court, at some point, after he wrote that written order on the constitutionality of the sentencing provision, he not only said the sentence is unconstitutional, he said Mr. Mosley would be guilty of a misdemeanor, and he made that plain in his oral pronouncements in court, to which there was no objection or request for clarification. Do you think it was the intent of the trial judge to find unconstitutional only A3C and A3, I'm forgetting the designation now. The last paragraph of his order, I think, says 720 ILCS 24-1.6 is hereby declared unconstitutional, both on its face and applied to the defendant. So that means the entire statute. Well, he definitely did not find the entire statute unconstitutional, and we know that from a few paragraphs earlier. But that's what the order ends up saying. A few paragraphs earlier under the heading Rule 18 findings, the judge specifically said the penalty prescribed by D2 when subsections 3A and 3C are present is what I'm finding unconstitutional here. Now, the last paragraph is ambiguous, but it's the state's burden to show that this court has jurisdiction. Rule 603 only allows the state to appeal a finding of unconstitutionality. There was no finding that any of the individual felony counts was unconstitutional in this case. And that's most clear, Your Honor, by the fact that the under 21 provision, subsection 3I, was never mentioned in the constitutional ruling. It's plain that this judge, at the end of the day, decided not only that he would not send Mosley to prison, but that he would be guilty of a misdemeanor. What's wrong with the state severability argument? You touched upon it, but it is true, isn't it, that nothing in subsection D2 requires the defendant to have two separate convictions, nor that the AUUW convictions specifically include either the A or C aggravated factors? I mean, that is a fact. Well, there are two problems with the state severability argument. First, in this specific case, because of the way the state charged Mr. Mosley, he can never be sentenced under subsection D2, even if this court reinstates all four of the remaining possible felony convictions. He can never be sentenced under D2 because the four counts that would be reinstated make no mention of the factual allegation under 3A that would trigger the D2 sentencing, along with the no FOID count. But more generally, Your Honor, subsection D2 is completely inseverable from subsection 3A under the plain language of D2 because the state says, you know, that it's a factor, these factors. Well, the use of the word factor in subsection D2 mirrors the use of the word factor in subsection A when it describes the aggravating factors. It's no surprise the legislature used the same word there. And most importantly, Your Honor, when the legislature enacted subsection D2 in 2011, subsection 3A was still a valid offense in the legislature's mind. The only reading of that language that's reasonable, I believe, is that under D2, the legislature was saying, where a defendant is found guilty under 3A and where he's found guilty under 3C, he's not eligible for probation. I think this Court's decision in Aguilar, which struck down 3A, then means that subsection D2 is, cannot be triggered in any case. But this Court need not reach, not even go that far, because it can never be triggered in this particular case. There may be some hypothetical case where it could be triggered if the state charged it that way, but in this case, the charging instrument does not allow for Mr. Mosley ever to be sentenced under D2. And that's why the constitutional ruling is also moved. Your Honors, Donta Mosley was a 19-year-old college student with no prior convictions and no juvenile adjudications. He had been shot twice before, he has a bullet in his leg, and his sister, 16-year-old sister, was shot and killed. The judge, at the end of the proceedings, found him guilty of a misdemeanor and sent him to probation. He is done with his probation. And according to the Circuit Court, this case is now closed. The state now, in this appeal, is asking you not only to increase his felony, increase his conviction from a misdemeanor to a felony, which this Court has never done after a final judgment has been entered. They want you to send him to prison.  Thank you. Thank you, Counsel. Your Honors, at the beginning, I'd like to address one thing Counsel raised, which appeared from his argument to raise what is effectively a procedural due process claim challenging the indictment that the people had in this case for the first time. There was no procedural due process claim in the defendant's brief in this case. In this case, the defendant did not challenge the indictment at any time before oral argument. We'd ask you to reject this claim as waived and something that cannot be raised for the first time on appeal at oral argument. And the fact of the case is that the people aren't asking this Court to amend the indictment. The indictment doesn't need to be amended in this case. The indictment is sufficient as it is to charge, and based on the explicit factual findings made at trial to make defendant eligible to be sentenced under D2. One other thing that Counsel noted was the Circuit Court's findings and the allegation they made in their brief that the findings were limited to the sentencing provision alone. But if you look at the Circuit Court's order under the big bold headline findings under Illinois Supreme Court Rule 18, it says based on the preceding discussion, this Court finds that the offense established by A1, A3A and A3C and the punishment prescribed by D2 are unconstitutional based on the proportion of penalties clause. If that ruling was limited just to the proportion of penalties clause, there would not need to be a plural R there. And it would not say that it was finding explicitly finding that the offense was unconstitutional. And this is an important point in this case, that there was simply no acquittal here. The Circuit Court was absolutely explicit that the reason it vacated the defendant's convictions is because of its constitutional ruling. And it stated in its Rule 18 order, quote, the evidence of trial showed the defendant both carried an uncase loaded immediately accessible weapon and did not have a firearm owner's identification card. Thus the factors listed in both A and C are present in this case and the court must impose the sentence under D2 and cited this as the reason why it was compelled to make the constitutional ruling. The Circuit Court in this case at no point in time ever found that there was a factual insufficiency in this case and repeatedly found that the facts were sufficient to support the convictions. Under this court's opinions in both Henry and Harrison, which are controlling here, thus there is no acquittal in this case. And this court does have jurisdiction. And it would also be worth noting in this case that the Circuit Court's ruling did not change from the time it issued this Rule 18 order to the time that it actually announced the order, which was all on the same day. The Circuit Court issued the order on that day and in court said, for the reasons stated in that Rule 18 order, I am finding these provisions unconstitutional. And the Rule 18 order itself enters the misdemeanor conviction. So there was no change in the Circuit Court's ruling from this order, which states that the facts were sufficient to support his felony convictions, explicitly states that, and explicitly states that the offense of aggravated unlawful use of a weapon is unconstitutional. The defendant here is effectively arguing that because the Circuit Court made a mistake in its remedy or, in a more charitable sense, gave the defendant an equitable remedy, should then benefit from that. However, this court, in the case of People v. Dixon, cited by the People in their brief, is one reason this court can reinstate the defendant's felony convictions here. Dealt with a case where the Appellate Court reversed the defendant's conviction and the Circuit Court had previously convicted defendant of other counts but had not entered a sentence on those counts, finding that they all merged. The Appellate Court, though, found that because no sentence had ever been entered on those counts, it could not remand for resentencing on those counts. And this court overturned that portion of the Appellate Court's opinion, finding that, quote, mischievous results may apply if the case could not be remanded for resentencing. What this court was saying in that instance was that you have someone who is effectively a technicality, those convictions would just be washed away without any finding that they were not valid convictions. And that is the same instance here. Mischievous results, as this court said, would result if these valid convictions were swept away by a Rule 18 order which the defendant now admits should be vacated because it's simply invalid. The Circuit Court's ruling here did not state any valid reason to overturn these convictions. The people would ask that this court reverse the Circuit Court's ruling, reinstate those convictions, and remand for resentencing. If there are no more questions, the people would ask this court to enter that remedy based on our arguments here as well as those in our briefs. Thank you. Thank you, Counsel. Case No. 115872, People of the State of Illinois v. Jonathan Mosley, will be taken under advisement as Agenda No. 1. Mr. Montague and Mr. Lenz, thank you for your arguments today and you are excused.